Meach *v.* Meach et al.

## SALLY MEACH *v.* EZRA MEACH AND OTHERS.

*Donatio Mortis Causa. Real Estate. Personal Estate.*

A gift of real estate cannot be sustained as a *donatio mortis causa.*

A gift of all the donor's personal property, in prospect of death, is a valid *donatio mortis causa.*

M. being desperately sick, in prospect of death, executed to his wife, a deed in the common form, of all his real estate, and at the same time executed a separate deed to her, of all his personal property, consisting of the stock on his farm, and choses in action. Both deeds were duly recorded. M. continued hopelessly sick for a little more than a month after the execution of the deeds, when he died. Upon a bill for a specific performance, it was *held,*—1st, That the deed of the real estate could not be sustained as a *post-nuptial* settlement, nor could it be construed and carried into effect as a testamentary disposition of the donor's property, it not being within the Statute of wills, nor as a *donatio mortis causa.* 2d, That the deed of the personal property was valid as a *donatio mortis causa.*

The question of what amount of property can pass by a *donatio mortis causa* considered.

APPEAL from the court of chancery. The facts sufficiently appear in the opinion of the court.

*M. L. Bennett* and ——— for orator.

*D. A. Smalley, E. J. Phelps* and *L. E. Chittenden* for defendants.

The case having been argued by counsel, was held under advisement until the December term, 1852, when the opinion of the court was delivered by

REDFIELD, Ch. J. This is a bill in equity, appealed into this court from the decree of the chancellor. The facts in this case, are not very fully shown, but sufficient appears, perhaps, to enable us to determine the case understandingly.

On the 13th day of May, 1847, Avery Meach, being desperately sick of consumption, executed in common form, a deed of all his real estate to his wife, the orator; the value being about ten thousand dollars. On the same day, and at the same time, he

executed a deed of all his personal property to his wife also, consisting of stock upon his farm, and choses in action to a considerable amount. The deeds were recorded in the Town Clerk's office on the 31st day of May, 1847. The grantor continued hopelessly sick until the 23d of June, 1847, when he died. The deceased left no child and no father or mother; his nearest heirs being of the degree of brothers. The orator continued in quiet possession of the property until August, 1847, when administration was taken out, and the possession of the property demanded of her, which she declined to surrender. It was arranged that she should retain the possession of the property until this suit could be instituted, and the title determined. The debts due from the estate, are between three and four hundred dollars. The grantor had adopted a female child, who is now dependant upon the orator in some degree.

It is first important to inquire what the purpose and intentions of Avery Meach were, in executing these conveyances, and then how far that purpose can be carried into effect, consistent with the established principles of law.

It has been claimed on the part of the orator, that this may be fairly regarded as a *post-nuptial* settlement, for the support and maintenance of the wife, not only during the coverture, but also, in the event of the husband's death, and so be upheld as a gift *inter vivos.* But it seems to us that the transaction is incapable of being viewed fairly, in that light. It had no reference to any settlement upon the wife, for her separate maintenance during the continuance of the relation subsisting between the parties. And marriage settlements, whether *post-nuptial* or *anti-nuptial,* have a chief reference to the independant support of the wife and her dependants, whether children or others. A marriage settlement, even a *post-nuptial* settlement, out of the separate property of the husband, which it is perfectly competent for him to make valid against his heirs, and even subsequent creditors if he chooses, and which have often been upheld by courts of equity, even when made directly between husband and wife, without the intervention of trustees, (2 Story's Eq. Juris. p. 817, and the numerous cases cited in note 2,) would certainly be a very gross misnomer, if, by *post-nuptial,* we were to understand an arrangement not made after marriage, which is its common import, but one which was only

to go into effect, and have operation, after the nuptial relation should have been forever extinguished by the natural death of the husband. It is not claimed, that the terms can be extended to any such transactions; but it is believed that the present case is incapable of being fairly viewed in any other light. Here is a man in the last stages of consumption, within a few weeks of his death, and doubtless fully conscious of the impossibility of much longer maintaining any hold upon property, who makes a sweeping disposition, in the present tense, of all his earthly possessions. Now it is claimed, that this may be treated as a rational, (and to be maintained in a court of equity, it must be also a reasonable,) disposition of property *inter vivos* between husband and wife, in order to secure a suitable provision, or portion, or maintenance, or settlement upon the wife.

Men that have property, and acquire it as this man did, by long continued industry and scrupulous economy, do not ordinarily, it may be said, part with it at once, and without reluctance, even into the hands of the most tried friend. This is such a reversal of the relations hitherto subsisting between the grantor and the grantee, that nothing but the certainty and the nearness of death would have induced the change. It is in vain to affect to convince ourselves that any less motive could have formed the prevailing consideration for the transaction.

And could we for a moment entertain the belief that this was intended as a *bona fide* settlement upon the wife, viewed as a mere transaction, *inter vivos*, it would be impossible for a court of equity to maintain it, on the ground of its unreasonableness. We can entertain no doubt that, had the grantor recovered his health, and the grantee, by her friends, claimed to hold the property against him as a gift, a court of equity would have decreed a complete restitution, upon the ground that the contract, as a present operative contract, was made under a material misapprehension of the important facts, the real consideration for the contract having, in fact, altogether failed. As is said in Justinian's Institutes, upon the subject of gifts *mortis causa, mors causa donandi magis est quam mortis causa donatio.* Death is rather the cause or consideration of the gift, than the mere occasion of its being made. And that view applies with great force to the present transaction. It had exclusive reference to a period beyond the life of the do-

nor, and could never have been intended to have any operation in any other event. It was, in fact, a testamentary disposition of the property. And when a court of equity is applied to for the purpose of carrying a contract into specific effect, it ought not to be expected to do it in any other sense than that by which it was understood between the parties. Refinements, evasions, forced and false glosses, have always an ugly sound in the mouth of a court of equity. If the contract cannot stand upon its own foundation, it ought not to be expected of a court of equity to decree a specific performance. And hence, while a court of equity recognizes a settlement of property by the husband upon the wife, even out of his own estate, and altogether aside of any property received by the husband from the wife, and often without the intervention of trustees, and originating altogether after the marriage, as perfectly valid, and to be upheld, and its execution aided by the court, no case can be found where any such settlement of property upon the wife as the present, regarded as a mere settlement or separate portion, has ever received the countenance of a court of equity. And in *Beard* v. *Beard,* B. Atkins, R. 73, where one attempted to make a very similar settlement upon the wife, in order to avoid a will which he had made in a drunken passion, at a tavern, by which he had given all his property to a brother, Lord Hardwick says,—" A man here has done two very unreasonable acts, and if it should happen that if one trips up the heels of the other, it is a very fortunate thing to set everything right again." But he held the conveyance to the wife void, as unreasonable, saying, " Neither will this court suffer the wife to have the whole of the husband's estate, while he is living, for it is not in the nature of a provision, which is all the wife is entitled to." And this is the settled law of the court of chancery at the present day.

Viewed, then, as a disposition of the donor's property to take effect at his death, the important inquiry remains,—can it be carried into specific effect in a court of equity?

There is, no doubt, always a disposition in courts of equity to uphold these informal testamentary gifts, so far as they are understandingly made, and are perfectly reasonable and considerate, which is no doubt eminently true of the present case, considered, as it was intended, as a disposition of the donor's property, to become operative at his death only. But a court of equity could

scarcely be expected to reform a man's last will and testament, even if it were certain they could thereby, in the particular case, come more precisely at his real intention than is expressed by the scrivener who drew the document, which was formally authenticated. Much less could a court of equity be allowed to create a last will for one, from deeds and other writings informally executed by him, and which he was at the moment informed and believed, up to the time of his death, would effect the purpose expressed therein. This would be a sweeping, wholesale repeal of all the statute requisites in regard to wills. And I confess that during the argument of this case at the bar, which was made exceedingly interesting on all hands, I could not disabuse my mind of the impression, that stripping the bill of all circumlocution, in its full scope, it was a petition to the court of chancery to create, out of these deeds, a last will and testament for Avery Meach. Feeling from the first, a ready inclination to listen to the object of the prayer of the bill, my mind was nevertheless continually haunted with the sense of absurdity at the very singular course it seemed necessary to take, in order to effect it—i. e., to make both the will and probate of the will of the donor. And in the examination of the case, with a sincere willingness to escape from that conclusion, my first impressions have been confirmed, at least so far as the real estate is concerned. A gift of real estate cannot be sustained, as a *donatio mortis causa,* for that only extends to the personality. We have, then, nothing remaining, so far as that is concerned, but the naked deed from husband to wife. This, it is admitted, cannot operate at law; and when the court of equity is applied to for a decree of specific performance, and to compel the execution of the contract by a competent trustee, *e. g.,* the administrator, they are met on the threshold by the obvious fact, that this was understood by the parties, to be neither more nor less than a testamentary disposition of the donor's property. And if it is not regarded in this light, it is incapable of being sustained as a disposition of property *inter vivos* upon the ground of its unreasonableness. We can only say that we deem it impossible to give the deed of real estate the effect intended by the parties, without virtually dispensing with the essential requisites of the Statute of Wills.

This view of the subject is not peculiar to this court. In a late

case in the English chancery, before Vice Chancellor, Knight Bruce, so late as June, 1851, *Moore* v. *Darton*, 7 Eng. Law and Equity Rep. 134, a doubt is suggested, whether the late English Wills Act, which is not more stringent than our own, "has not precluded all donations," of personal property *mortis causa*. But that learned Judge did ultimately come to the conclusion that such was not the case. There can be very little doubt that a case of the character of the present, including both real and personal property, and extending to all a man's earthly possessions, would have been regarded by that court, as altogether repugnant to the Wills Act; certainly so far as the real estate is concerned.

In the late case of *Headly* v. *Kirby*, decided by the Supreme Court of Pennsylvania, in May, 1852, American Law Register, Nov. p. 25, it was expressly held, that "A gift of all the donor's property in prospect of death, is not a *donatio mortis causa*. It is not valid, unless executed as a written or as a nuncupative will." The case seems to have been very elaborately argued by the most competent counsel, and is supported by a somewhat ingenious argument from the bench, by Mr. Justice LOWRIE. And the Editors of the Register evidently incline to support the decision as altogether unanswerable. As the property in that case was all personal, and what was done might have been regarded as sufficient to constitute a gift *mortis causa*, it may be somewhat questionable how far a *donatio mortis causa* is to be altogether invalidated, by reason of its embracing the major part, or the whole of one's property, if it be in other respects unobjectionable. Neither the English nor American cases have attempted any such criterion before, and it would seem, at first blush, rather difficult of application. But if these cases show no more, they may be regarded as evidencing a disposition on the part of courts in both countries, not to extend these informal testamentary dispositions of property, in manifest abuse and disregard of the salutary enactment in regard to wills.

It only remains to inquire how far the deed of the personal property, in this case, can be maintained as a *donatio mortis causa*.

1. It seems never to have been regarded as any objection to a gift, *mortis causa*, that it was made by the husband directly to the wife. The elementary books all so treat it. 2 Kent's Com. 7

Meach *v.* Meach et al.

Ed. 556. (445); ib. 178.   The civil law was clearly so, Inst. 2, 7, 3; Cooper's Justinian, 102, 103, where it will fully appear that not only gifts *mortis causa* between husband and wife were sanctioned, but even between them *inter vivos,* as *donationes propter nuptias.*   And numerous decided cases in the English Chancery fully establish the point that such gifts are good between husband and wife.   *Lawson* v. *Lawson,* 1 P. Williams' R. 441.   *Miller* v. *Miller,* 3 ib. 356.   *Jones* v. *Selby,* Prec. in Ch. 300.   The latter case is that of a house-keeper, to be sure, but the delivery was by giving up the key of a trunk, and was held sufficient, notwithstand-. ing the donor held the custody of the trunk and received the interest on the government security, which was the subject of controversy.   But the case failed upon another ground.

2.   This case combines, we believe, all the essential facts requisite to constitute a good *donatio mortis causa* by the common law, and many of them strikingly identical with the very words used by the civil law writers, in defining these gifts, from which the thing was transplanted into the English law.   *Mortis causa donatio est, quæ propter mortis fit suspicionem, cum quis ita donat, ut siquid humanitus ei contigisset, haberet is, qui accipit; sin autem supervixisset is, qui donavit, reciperet; vel si eum donationis poenituisset, aut prior decesserit is, cui donatum sit.   Et in summa, mortis causa donatio est, cum magis se quis velit habere, quam eum, cui donat: magisque eum, cui donat, quam heredem suum.*   That was the very object and intention of this gift; and the transaction answers well enough the requisites of the English chancery law. It was made during the last sickness, in the prospect of certain and speedy dissolution, to take effect fully after death only.   It was but a rational and reasonable gift under the circumstances, and was intended to become inoperative, in case of the recovery of the donor from that sickness, or his surviving the donee, or changing his intention.   All these incidents are not fully set forth in the instrument of donation, and we do not find that is essential to the validity of such a gift.   If that should even prove to be so, to a greater extent than appears in this deed, which has not been discussed at the bar, we entertain no doubt a court of equity will· lend its aid to fully effect the purpose of the donor, by supplying any formal defect in the instrument by way of reforming it, against the personal representative, who, in these gifts, is regarded as a trustee for the donee.

Says Mr. Justice Story, 1 Eq. Jur. p. 673, "the doctrine no longer prevails, that where the delivery will not execute a complete gift, *inter vivos*, it cannot create a *donatio mortis causa*, because it would not prevent the property from vesting in the executor." On the contrary, the doctrine now established by the highest authority, is, that courts of equity do not consider the interest as completely vested in the donee, but treat the delivery of the instrument as creating a trust for the donee, to be enforced in equity. *Duffield* v. *Elwes*, 1 Bligh's R. N. S. 497, 530, 534; same case affirmed in the House of Lords, by the name of *Dow* v. *Hicks*, 1 Dow & Clark, 1, reversing the decree Vice Chancellor Leach, 1 Sim. & Stu. 239. In this case it was finally established, in England, that a bond and mortgage passed by mere delivery, without any written assignment, as a good *donatio mortis causa.* And it seems now to be well settled that any chose in action, whether negotiable or not, whether simple contract or specialty, if it be the contract, or promise of some other than the donor, and do not constitute any obligation upon the donor, may, by mere delivery, constitute a good gift *mortis causa.* And if there is no formal delivery, but an assignment under seal, and perhaps only in writing on a separate paper, this will, by being delivered, constitute a good delivery of the thing, and create a trust, in favor of the donee, against the personal representative. We have noticed this, in the extract from Story's Equity Jurisprudence. Lord Chancellor Loughborough, in discussing this subject in *Tate* v. *Hilbert*, 2 Vesey, Jr., 120, says, "It is not necessary to discuss, in this case, wheth- "er delivery is necessary in all cases. Perhaps it is not difficult "to conceive that it might be by deed or writing." He further intimates, that there is no objection to a formal deed, as constituting a sufficient perfecting of the gift to create the trust in favor of the donee. And upon principle, it would seem, there could be no objection to creating the gift by deed, without any formal, manual tradition of the thing; which, in many cases, would be difficult, and in others, like the present, consisting, in part, of a large herd of cows, altogether idle and absurd. And the deed imports conclusively a sufficient consideration,— is an estoppel upon the donor and his personal representatives, and, after delivery and public registration, is a sufficient setting apart of the property to the use and control of the donee, and far less liable to perversion or abuse,

than any mere parol gift, with the most ceremonious delivery. In the case of transfer of property by deed, nothing remains to perfect the gift. It does not remain inchoate, or incomplete, or in any sense revocable, after the delivery of the deed. Chancellor Kent, says, 2 Comm. 559, 7th Ed. in note, "The requisites of a "valid *donatio mortis causa* are well collected, in a learned note to "*Walter* v. *Hodge*, 2 Swanst. 106, where it is stated, and proved, . "that it requires delivery of the property, or the documentary ev-"idence of it." This has reference, perhaps, to choses in action primarily; but it is difficult to see why the deed of a thing being delivered is not as much a delivery of the thing, as the delivery of a bond or note is a delivery of the debt. In principle it clearly is so. This seems to be a full recognition of this mode of perfecting the gift, both by the learned commentator and the annotator of Swanston. And if any question could be entertained of the sufficiency of the deed itself, after delivery and formal registry, to perfect the gift, we do not perceive but there was, in fact, all the actual delivery of this property of which it was susceptible, as between husband and wife, whose possession is of necessity, in some sense, in fact, and always in law, identical. If one had been required to devise the best mode of perfecting a gift of this kind between husband and wife, it could not, perhaps, under the circumstances, have been done better, or more in accordance with legal principles, than this was, altogether accidentally we must suppose, done. For the thing seems to have been got up, in the main, very inartistically; and the actual delivery is all that could have been made, without involving the parties in acts more or less absurd and ridiculous.

In examining the case, it occurred to me that some might object to this deed as a gift *mortis causa*, inasmuch as it does not, in terms, very explicitly provide that the gift should only take effect after the donor's death. In a mere oral gift this is often implied, from the attending circumstances, as is very obvious in the present case. But the gift being by deed, we are, in a measure, confined to its terms, construed with reference to the attending circumstances. And as this deed professes in terms to convey, not only all the donor's property at the date, but all of which he should be possessed at his decease, it is fair, we think, to give the words that signification, that the donee's full right under the deed should

Meach v. Meach et al.

not become absolute and perfect, except in the event of the donor's death.

But if this were doubtful, there is no doubt a court of equity would lend its aid to perfect the deed in this particular. It is said in *Harris* v. *Clark*, 2 Barbour's S. C. R. 94, 98, by Gridley, J., "That in gifts *inter vivos*, a court of equity will not compel the " donor to complete his gift, or an executor to complete the gift of " his testator; whereas, in the case of gifts *mortis causa*, the donor " may successfully invoke the aid of the court of chancery for that " purpose." In *Tollett* v. *Tollett*, 2 P. Wms. 489, the defective execution of a power by will, when it should have been by deed, was supplied in equity in favor of the wife. And the defective execution of a power is always supplied in courts of equity, when that is necessary to perfect a gift *inter vivos*, even if that is the only instance in which that court does interfere to perfect a gift *inter vivos*. But it is every day's practice for such courts to lend their aid to perfect gifts *mortis causa*. But this, we conceive, is not necessary in the present case. We think, therefore, that the deed of the personal property, with the attending circumstances, did constitute a good gift *mortis causa*, and that the orator must hold it. And as the taxable costs are small, and the suit is an amicable one, and neither party fully prevails, no costs should be allowed.

Decree of court of chancery reversed, and case remanded to that court to pass a decree according to this decision.

---

NOTE. I have not deemed it important to go into any exposition of the history of the law in regard to gifts *mortis causa*, or indeed into any extended discussion of its policy or present state. For, notwithstanding the efforts which seem to have been made to limit its operation, even as far back as the time of Justinian, who required all such gifts to be made in the presence of five witnesses, and also subjected them to the operation of the *lex Falcidia*, by which one was prohibited from disposing of more than three-fourths of his estate to the prejudice of his heir; still the thing maintains its hold upon the jurisprudence of most of the European states, and is evidently a good deal extending its operation in the American states. One cannot but feel that it was never properly intended to apply to a general disposition of a large estate to the utter subversion of the Statute of Wills. And still, when we attempt to limit its operation, we *encounter* embarrassments not readily disposed of. If one may remit a debt of £500, about $2,500, by the simple act of delivering the receipt for it to a third person, a servant attending the death bed, with a general expression of desire, in the briefest words, that the debt should be cancelled, which was the case of *Moore* v. *Darton*, 7 Eng. Law and Equity R. 134, and which was sustained without difficulty by a distinguished English Vice

Meach *v.* Meach et al.

Chancellor, we can scarcely be expected to say that twice that amount, therefore, is not a good donation *mortis causa.* And although, in practice with us, this mode of final disposition of property has oftener been confined to some favorite articles of personal attire, or ornament perhaps, like watches and jewels, yet an examination of the cases will show a wonderful variety in the character and extent of property disposed of in this mode, often including all one possesses, consisting of the largest extent and variety of property, both in possession and in action; and thus, in fact, amounting to a nuncupative will. And still I find no case, except the late case in Pennsylvania, where any attempt has been made to limit its operation. on account of the comparative or absolute extent of the property disposed of, And the more I have reflected upon the subject and compared the cases, with a view to evolve some rational and practicable principle of limitation to the extent of its operation, the more I have felt constrained to declare that it cannot be done by any powers of abstraction or generalization, which my short sight is able to command.

If the servant, whose whole estate consists of a few hundred dollars, balance of earnings, in the hands of his employer, and five pieces of property, in possession, is to be allowed, in his last sickness, to dispose of it to five different persons by mere words, and by committing the entire evidence of debt to a fellow servant, which seems now to come within all the best considered cases upon that subject, it would seem invidious to hold, that when the property amounts to thousands, composing the principal estate of a substantial householder, that therefore it could not be conveyed in this mode. And if the man of great worldly possessions, who has executed his will in the most reverent formality, may, when death presses him sore, modify that disposition, which alone the written law of the land recognizes, by taking from his secret drawer securities for debt to the amount of thousands of dollars, and making an irrevocable disposition of them after death, by the brief words " I give," and the simple act of delivery to the wife, which, in law, is a delivery to himself, a mere change from one hand to the other, it would certainly not be easy to say that one whose whole property did not amount to one tithe of that sum, or if it did exceed it by hundreds of dollars, could not do the same. And yet it will be noticed, that the last case supposed is the well considered and constantly recognized case of *Miller* v. *Miller,* 3 P. Wms. R. 356. ''

It ought, perhaps, here to be said, that the present case is decided neither upon the sufficiency of the deed, nor of the delivery of the property, such as it was,. which is not very fully shown in the case, but which we feel justified in treating as being such as was natural, under the circumstances, where the husband had become so incapable of longer managing or controlling his property and business,. that it fell exclusively under the control of the wife, even before his death. It is. upon neither of these grounds alone that this case is decided, but upon both, not intending to go further, in settling the law upon this perplexing subject, than the imperious necessities of the case demand.

Some other views of this case undoubtedly might be taken, but most of them more or less remote from the actual merits of the case. As a gift *inter vivos,* I am not aware that the wife is regarded as possessed of any peculiar equity, beyond her legal rights, more than any other donee. If the property had been the result of her own earnings exclusively, or of accumulations by her for her own use, out of an allowance made her by her husband, or especially if it had been the result of money which was hers at the marriage, or by inheritance subsequently, no doubt a court of equity, making her equity the basis of its action, might extend

XXIV.     39

Meach *v.* Meach et al.

relief, in many cases, where otherwise it would not. But there is nothing of that kind in this case. And treating it as a mere gift *inter vivos*, a court of equity will never interfere to make it operative, except in the single case of the defective exe cution of powers, as we have seen, which, in practice, are but little known among us. Equity has oftener, by far, interfered to carry into effect the apparent pur pose of the donor, in regard to his bounty, where the gift, although in form a gift *inter vivos*, was in fact a testamentary disposition among his heirs. This has often been done in regard to donations *mortis causa*, as we have shown, and in one in stance certainly, in this State, in the case of real estate. *Thompson* v. *Welch*, Ben. Co. Sup. Ct. 1849, not yet reported.

But that was to do equity and justice among the donees, according to the intention of the donor, and when the title at law confessedly passed by the deed of gift. And we are aware that deeds of land in this State, in repeated instances, which were in fact testamentary dispositions of property, and delivered as escrows, to become operative only in the event of the death of the grantor, have nevertheless been sustained and held valid, both at law and in equity. But that is upon the principle that the deeds were valid in themselves, and required no aid of a court of equity. But a deed cannot be delivered to the grantee to become operative upon the death of the grantor. In that case it must take effect presently, or not at all. The grantee cannot hold a deed as an escrow.