## Case No. 6,198.

### HASSELL v. BASKET et al.

[8 Biss. 303; 7 Cent. Law J. 308; 11 Chi. Leg. News, 58; 18 Alb. Law J. 323; 3 Civ. Law Bul. 919.] [1]

Circuit Court, D. Indiana. Oct., 1878. [2]

DONATIO CAUSA MORTIS—DELIVERY—TITLE—CERTIFICATE OF DEPOSIT—INDORSEMENT.

1. Donatio causa mortis must be of personal property or choses in action, actually delivered by the donor to the donee, in apprehension of approaching death from an existing disorder, or other impending peril, and from which death must ensue without any complete intermission.

2. The gift must vest in the donee a present title, though it is defeasible until the death of the donor.

·3. The deceased, the donor, indorsed a certificate of deposit to the defendant, but the indorsement was of such a character as to absolutely prohibit the latter from claiming any present title to the money, or any right to demand payment until after the death of the donor: *Held*, not to be a donatio causa mortis.

[See note at end of case.]

This was a bill in chancery brought by Milas J. Hassell as administrator of Hillery M. Chaney, deceased, to recover from the defendant, Martin Basket, possession of a certificate of deposit, which had belonged to Chaney before his decease, and which the defendant claimed as donatio causa mortis.

A. & J. E. Iglehart and T. T. Foreman, for complainant.

Shackelford & Richardson, Denby & Kumler, Jonathan W. Gordon, and J. J. Turner, for defendants.

GRESHAM, District Judge. The bill in this case alleges that Hillery M. Chaney, a citizen of Sumner county, Tennessee, on the 8th day of September, 1875, deposited in the Evansville National Bank, at Evansville, Indiana, $23,514.70, taking a certificate of deposit therefor; that in January, 1876, said Chaney suddenly died, and the plaintiff was appointed his administrator; that the defendant, Martin Basket, who was a nephew of Chaney, by a fraudulent combination with one Bryan, whose wife was a niece of Chaney, obtained possession of the certificate of deposit and refused to surrender the same on demand; that no consideration of any kind passed from the defendant Basket to Chaney for the certificate; that Basket claimed to hold the same by gift from Chaney, but that at the time of such alleged gift, and for a long time previously, Chaney was of unsound mind.

The National Bank, its president and cashier, and Messrs. Shackelford and Richardson, who as the counsel for the defendant Basket, have possession of the certificate, are made defendants.

The defendant, Basket, by his answer admits the possession of the certificate, and alleges that Chaney, sixty days before his death, then being in full possession of all his mental faculties, but in apprehension of death from a disorder with which he was then suffering, with his own hand wrote and signed the following indorsement on the certificate: "Pay to Martin Basket, of Henderson, Ky., and no one else, then, not till my death. My life seems to be uncertain; I may live through this spell, then I will attend to it myself. H. M. Chaney;" and· delivered the paper so indorsed to the defendant, Basket; that Chaney died of the disorder, and the certificate remained in his (Basket's) possession until he placed it in the hands of his counsel, the defendants, Shackelford and Richardson; and that the certificate was a gift to him in trust, as well for himself as his brother and sisters, at his option.

The bank and its officers answered, asking the protection of the court in the payment of the money. Basket filed a cross bill, setting up the gift as in his answer, and the plaintiff answered, traversing the material allegations. General replications were filed to all the answers.

For several years before his death Chaney had been in failing health, complaining of dyspepsia, and physicians had treated him for that disease. During the sixty days that elapsed between the delivery of the indorsed certificate to Basket, and Chaney's death, in January, 1876, he was generally up and about his premises looking after his business, as he had done for months previously. It appeared from a post mortem examination that he had also suffered from consumption. The testimony conclusively shows that at the time the certificate was delivered to Basket, Chaney was not in extremis, and that he did not act in apprehension of immediate death. On this point there was no serious controversy. Chaney's domicile being in the state of Tennessee at the time of his death, the laws of that state determine the succession to his personal property.

In construing the statutes of Tennessee, relating to wills, the supreme court of that state has held that nuncupative wills must be made in extremis. Hatcher v. Millard, 2 Cold. 30; Gwin v. Wright, 8 Humph. 639. Section 2165 of the Tennessee Code, declares that no nuncupative will is good unless proved by two disinterested witnesses, present at the making thereof, who were specially requested by the testator to bear witness to it. The indorsement on the certificate has never been probated as a testamentary instrument according to the laws of Tennessee. It follows that the defendant, Basket, cannot claim the money as a testamentary gift.

The plaintiff, as administrator, is, therefore, entitled to the fund in controversy, unless it belongs to Basket, as a gift causa mortis. It would seem that the courts and law-

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 18 Alb. Law J. 323, contains only a partial report.]

[2] [Affirmed in 107 U. S. 602, 2 Sup. Ct. 415.]

writers have not always been clear in speaking of gifts of this kind.

In 2 Kent, Comm. *p. 444, we find the following: "Such gifts are conditional, like legacies, and it is essential to them that the donor make them in his last illness, or in contemplation and expectation of death; and, with reference to their effect after his death, they are good, notwithstanding a previous will, and if he recovers, the gift becomes void."

In Story, Eq. Jur. § 606, the gift is thus defined: "It is, properly, a gift of personal property, by a party who is in peril of death, upon condition that it shall presently belong to the donee in case the donor shall die, but not otherwise. To give it effect, there must be a delivery of it by the donor; and it is subject to be defeated, by his subsequent personal revocation, or by his recovery or escape from the impending peril of death. If no event happens which revokes it, the title of the donee is deemed to be directly derived from the donor in his lifetime; and, therefore in no sense is it a testamentary act."

Williams, in his treatise on the Law of Executors and Administrators, in speaking of this kind of gift (volume 1, p. 771), says: "First—The gift must be with a view to the donor's death. Second—It must be conditioned to take effect only on the death of the donor by his existing disorder. * * * Third—There must be a delivery of the subject of the donation."

In Nicholas v. Adams, 2 Whart. 17, the opinion of the court was delivered by Chief Justice Gibson, who says: "Donatio causa mortis is something spoken of as being distinct from a gift inter vivos, the former having sometimes been supposed to be made in reference to the donor's death, and not to vest before it, but inaccurately, as it seems to me; as this gift, like every other, is not executory, but executed in the first instance by delivery of the thing, though defeasible by reclamation, the contingency of survivorship or deliverance from the peril. The gift is consequently inter vivos."

Gifts causa mortis must be of personal property or choses in action, actually delivered by the donor to the donee, in apprehension of approaching death from an existing disorder or other impending peril, and death must ensue from such existing disorder or other impending peril without any complete intermission.

But without further effort to define such gifts, it is sufficient to say that they are not good and are never upheld without certain essential requisites, one of which is delivery, actual or constructive, to the donee, or some one in trust for him, of the subject matter of the gift. If the subject of the gift be capable of actual delivery, the delivery must be actual. Such gifts afford tempting opportunities for fraud, and therefore the Roman law required them to be executed in the presence of five witnesses. And inasmuch as delivery lessens the opportunity for fraud, it has always been held an absolute requisite to their validity. Money on deposit may be delivered by a delivery of the certificate of deposit, provided there be the intention at the time to transfer to the donee the dominion and ownership. It is now settled that choses in action, whether negotiable or not, may be the subjects of gifts causa mortis. Brunson v. Brunson, Meigs, 630; Brown v. Moore, 3 Head, 671; Meach v. Meach, 24 Vt. 591; Hanson v. Millett, 55 Me. 184; Cutting v. Gilman, 41 N. H. 147.

The money itself was not delivered to Basket, nor was the certificate so assigned to him as to enable him to get possession of it. With the certificate, as indorsed, he had no right to demand the money from the bank. If on his demand the bank had paid the money, such payment would not have protected it against another demand by the donor. The indorsement was not of such a character as to enable Basket to reduce the money to his possession. He could not by virtue of the indorsement have compelled the delivery of the money to him by the bank during the life of the donor. The donor, by the indorsement, had not parted with the possession or dominion of the property. It was still under his control. The language of the indorsement is certainly inartistic, but its meaning is patent. In legal effect it is, "If I die in my present illness, it is my intention that the money evidenced by this certificate of deposit shall belong to Martin Basket. When I thus die, and not before, it shall be paid to him." With this clear intention of the donor not to part with his money as long as he lived, it will not do to say that delivery of the certificate was a constructive delivery of the money evidenced by it.

But it is said that the subject of a gift causa mortis vests in the donee only at the death of the donor, and that therefore the conditions expressed in the assignment would have been implied, if the certificates had been delivered, with a blank indorsement, or no indorsement at all. It must be conceded that some of the authorities seem to support this view.

A will is the disposition of one's estate, to take effect after his death. Any disposition of property to take effect upon the death of the owner or donor is testamentary. It is of the essence of a bequest that it take effect on the death of the testator. It appears by the very terms of the assignment that no present title or interest in the money could pass to the donee during the life of the donor. No instrument of writing can be both a last will and testament, and a gift causa mortis. The indorsement was testamentary in character, and if it had been properly executed according to the statutes of Tennessee, it doubtless might have been probated as the donor's will.

There is a wide difference between a legacy and a gift. Both possession and title

must pass to the donee to constitute a gift. This applies as well to gifts causa mortis as to gifts inter vivos. The title must pass inter vivos, or it never can pass, but will go to the donor's legal representative. In a gift inter vivos, the donor reserves ño right of revocation; in a gift causa mortis he does. The donee of a gift causa mortis holds the thing given, not as bailee of the donor, but as present owner on the condition attached to such gifts. A gift causa mortis vests in the donee a present but inchoate, or defeasible title until the happening of the event necessary to render it absolute, and therein it differs from gifts testamentary and gifts inter vivos. This question is discussed in Gass v. Simpson, 4 Cold. 294. "The property," say the court, "must pass at the time, and not be intended to pass at the giver's death. * * * Upon the happening of the event upon which the gift is dependent, the title of the donee becomes by relation complete and absolute from the time of the delivery, and that without any consent or other act on the part of the executor or administrator; consequently the gift is inter vivos." See, also, Duncan v. Duncan, 5 Litt. [Ky.] 12.

In Parish v. Stone, 14 Pick. 198, the transfer of choses in action as gifts causa mortis is discussed. "These cases," said Chief Justice Shaw, in delivering the opinion of the court, "all go on the assumption that a bond, note, or other security, is a valid, subsisting obligation for the payment of a sum of money, and the gift is in effect a gift of the money, by a gift and delivery of the instrument which shows its existence and affords the means of reducing it to possession."

In the case at bar, the certificate was delivered, as the language of the indorsement clearly shows, with no intention of a present gift of the money, with authority to the donee to reduce it to possession. On the contrary, the indorsement was of such a character as to absolutely prohibit the donee from claiming any present title to the money, or any right to reduce it to his possession during the life of the donor.

The donor lived in Nicholas county, Kentucy, the place of his birth, until 1871, when he was sixty years old. He was married to Miss —— Hanby in 1832, with whom he lived thirty-six years, and by whom he had seven children; one son and four daughters grew up, married and settled near their parents. During these thirty-six years, by industry, economy and good judgment, an estate worth some $50,000, was accumulated. The evidence shows that the donor was an eccentric man, and his widow testified that he was always a hard man to get along with. In 1868 he seems to have become fascinated with a woman named Nancy Hyatt, with whom he established immoral relations, which fact became known to the public and his family. The wronged wife's remonstrances and entreaties were of no avail in winning back to his family the faithless and unfeeling hus-

band and father. Not content with the injustice already inflicted upon his family, he showed himself utterly insensible to every sentiment of affection and honor by publicly attacking the chastity of his wife and denying the paternity of all but one of his children.

It is not pretended that there was the slightest foundation for this monstrous slander, and naturally enough a separation ensued, when the property was divided by agreement, the wife and children getting the home farm worth about $8,000. Previous to this strange infatuation with the Hyatt woman, the donor had the respect and esteem of his neighbors, and previous to that time the evidence fails to show that he was not attached to his family. Shortly after the separation, and the division of the property we find him and Nancy Hyatt in Hancock county, Indiana, where, after a residence of only four months, by a fraud on the jurisdiction of the court, he succeeded in having a decree of divorce entered in his favor, and straightway he and the Hyatt woman went through the formality of a marriage. Immediately after this, he and his pretended wife removed to Sumner county, Tennessee, and settled upon a farm, where they separated after having lived together two years.

The money on deposit, it is claimed, was given to the defendant, Basket, a nephew, when no one was present but the alleged donor and donee, and the remainder of the donor's estate all went to other collateral relations. In such a contest, it must not be thought strange if the donee is held to the strictest proof of his title. The outraged wife and children who had a natural claim upon the donor's bounty, will not appeal to a court of equity in vain, unless their adversary has established his right to the money in dispute, by the most convincing testimony.

The allegation of mental unsoundness is not sustained by the evidence—it would be well for the memory of the donor if it were. These views render it unnecessary to consider other questions which were argued with ability by counsel on both sides. Decree that the certificate of deposit be delivered to the complainant, and that the money evidenced by it be paid to him.

[NOTE. An appeal was then taken by the defendant to the supreme court, where the decree was affirmed in an opinion by Mr. Justice Matthews, who said that the indorsement was invalid, as it did not divest the donor of all present control, and enable the donee to reduce the fund into possession at once. 107 U. S. 602, 2 Sup. Ct. 415.

[The defendant then made a motion for a rehearing on the ground that the indorsement and delivery of the certificate of deposit, if void as a donatio mortis causa, was nevertheless good as a will of personalty under the laws of Tennessee, and, passing the title as such, entitled the appellant to a decree of payment. The petition was denied in an opinion by Mr. Justice Matthews, who said that, even if good as a testamentary disposition, the fund would nevertheless pass first to the administrator. 108 U. S. 267, 2 Sup. Ct. 634.]